Danciger v. Cooley.

---

No. 19,945.

Abe Danciger et al., Partners, etc., *Appellants,* v. D. G. Cooley, *Appellee.*

OPINION DENYING A REHEARING.

SYLLABUS BY THE COURT.

INTERSTATE COMMERCE—*Intoxicating Liquors—Federal Statute—Construction.* In the absence of any interpretation by the United States supreme court, the federal statute forbidding a common carrier or any other person to collect the purchase price of intoxicating liquor from the consignee, in connection with its transportation into one state from another, will be construed by this court as applying to an agent of a shipper who delivers the bill of lading upon payment of a draft for the price.

Appeal from Shawnee district court, division No. 1; Alston W. Dana, judge. Opinion denying a rehearing filed July 8, 1916. (For original opinion of affirmance see *ante,* p. 38, 157 Pac. 453.)

*R. E. Jacobs, Harry L. Jacobs,* both of Kansas City, Mo., *J. P. McLaughlin,* of Osage City, and *C. P. Cowgill,* of Topeka, for the appellants.

*Otis E. Hungate,* of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: In a petition for a rehearing it is argued that the decision is in conflict with one which had been rendered a few weeks earlier by the United States supreme court (*Rosenberger v. Pacific Express Co.*, 241 U. S. 48). That case has been examined and is not regarded as fatal to the validity of the Kansas statute relied upon in the original opinion (Gen. Stat. 1909, § 4398).

The plaintiffs also strongly urge that the federal statute of 1909, which this court regarded as penalizing the transactions on which the action is founded, is not open to the construction given it, and ask a rehearing in order that the question may be further argued. The motion itself includes a full and able presentation of the matter, setting out in detail the various decisions and administrative rulings relating to it, and a further hearing is not thought to be necessary. The section under consideration reads:

"Any railroad company, express company, or other common carrier, or any other person who, in connection with the transportation of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind, from one State . . . into any other State, . . . shall collect the purchase price or any part thereof, before, on, or after delivery, from the consignee, or from any other person, or shall in any manner act as the agent of the buyer or seller of any such liquor, for the purpose of buying or selling or completing the sale thereof, saving only in the actual transportation and delivery of the same, shall be fined not more than five thousand dollars." (Part 1, 35 U. S. Stat. at Large, ch. 321, § 239, p. 1136, 4 U. S. Comp. Stat. 1913, § 10,409.)

The federal court of appeals for this circuit has held that notwithstanding the act in terms relates to the conduct of common carriers "or any other person," it should be interpreted, by applying the principle relating to the use of associated words, as excluding "all persons who are not members of the general class of carriers." (*First Nat. Bank v. United States*, 206 Fed. 374, 378.) The decision there appealed from had been to the contrary, and one of the three judges who heard the case on review dissented. The opinion of the reviewing court, the dissenting opinion (p. 380), and the opinion of the trial court (*United States v. First Nat. Bank*, 190 Fed. 336) present the arguments on each side of the question so fully

that no detailed discussion seems necessary. The general purpose of the act was of course to prevent evasions of local laws for the regulation or suppression of the liquor traffic. The history of its enactment, as stated by Judges Amidon and Trieber, shows that the method of doing business employed in the present case was in fact one of the very abuses against which it was directed. The majority opinion is avowedly based upon a strict construction adopted because of the penal character of the statute, and because of the practical consequences of its literal enforcement. One reason it assigns for the conclusion reached is that, as the mischief at which the statute was leveled existed only in the states wherein the sale of liquor was prohibited, it is "incredible" that congress by the language used intended "to strike down this method of collection for the sale of liquors transported in interstate commerce in all the states, in the large majority of which the manufacture and sale of intoxicating liquors were not prohibited." (*First Nat. Bank v. United States*, 206 Fed. 374, 378.) This quantitative argument takes no account of the extensive districts in which sales of liquor are forbidden under local option laws, or of the possibility that congress may have anticipated the increase of state-wide prohibition that has actually taken place, so that at the present time the "dry" territory of the country exceeds in area the "wet" in the proportion of at least four to one. (See Map, 112 Outlook [Jan. 19, 1916] 120.) The preponderance of expressed opinion against giving effect to the letter of the statute appears to be due to an estimate of the importance of preserving the right to sell intoxicating liquors by means of drafts attached to bills of lading, in which this court does not share. In our judgment the act, notwithstanding its penal character, should be reasonably construed with a view to carry out the purpose for which it was enacted. Unless the federal supreme court gives it a different interpretation we shall adhere to that adopted in the original opinion.

The petition for a rehearing is denied.