(No. 12837.—Reversed and remanded.)

THE MICHIGAN CENTRAL RAILROAD COMPANY, Plaintiff in Error, vs. THE INDUSTRIAL COMMISSION et al.— (MABEL K. BOND, Admx. Defendant in Error.)

*Opinion filed December 17, 1919.*

1. WORKMEN'S COMPENSATION—*when injury to extra switchman does not happen in the course of his employment.* Where an extra switchman who is employed on days when there is work for him, is told, on reporting at the yard after working for several days, that there is no work for him that day, there is no employment although he intends to report again in the evening, and if he is injured while returning to his home the injury does not happen in the course of his employment.

2. SAME—*when an injury does not arise out of employment.* Where an extra switchman, after being told at the yard that there is no work for him that day, voluntarily and purely for his own convenience boards a moving freight train, intending to ride towards his home, and is knocked from the train by contact with a viaduct and killed, his injury does not arise out of his employment.

3. SAME—*injury must arise out of and in the course of an employment.* To entitle an injured person to compensation under the Workmen's Compensation act the contract relation of employer and employee must have existed at the time of his injury and the injury must have arisen out of and in the course of the employment.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

WINSTON, STRAWN & SHAW, (SILAS H. STRAWN, and CHARLES J. McFADDEN, of counsel,) for plaintiff in error.

JAMES V. CUNNINGHAM, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Lewis J. Bond was riding on the top of a freight train of the Michigan Central Railroad Company and while passing under a viaduct was knocked off and killed. His mother was appointed administratrix of his estate and claimed com-

pensation for his death.  The arbitrator made an award of $3500, which was affirmed by the Industrial Commission and by the circuit court of Cook county upon a writ of *certiorari* to the Industrial Commission.  The court entered judgment for the amount, ordered execution and certified that the case was one proper to be reviewed by this court.

Lewis J. Bond was an extra switchman employed intermittently from time to time when he was needed from November 4, 1916, to January 4, 1917, by the Michigan Central Railroad Company at its Argo yards, about nine miles southwest of Chicago, at Fifty-ninth street and Seventy-sixth avenue.  Extra switchmen generally reported for work at seven o'clock or nine o'clock in the morning and if there was work for them they were employed, but if there was no work they would return home and come back at seven o'clock in the evening to see if there was work at that time.  Bond worked as an extra switchman on January 1, 2 and 3, 1917, in place of Murphy, a regular employee who was absent from work.  Murphy returned and resumed his employment on the morning of January 4, and when Bond came to the yards, shortly before nine o'clock, he was told that there was no work for him.  He said to the yardmaster that he would go home and return at seven o'clock in the evening and see if there would be anything for him then.  Murphy's freight train had been made up, consisting of 45 or 50 freight cars carrying inter-State freight, and it pulled out of the Argo yards going east, destined for the Chicago Junction yards, four or five miles distant, drawn by an engine and pushed by one in the rear. Bond started to get on the train and was warned to be careful.  He caught hold of the ladder of the fourth or fifth car from the rear of the train and climbed to the top of the car, which was then about ninety feet west of a viaduct over the tracks, between the telltales over the train, which gave warning of the danger and the viaduct.  When he reached the top of the car he turned west with his back

to the viaduct, and, facing toward the telltales, he walked toward the rear of the train. The yardmaster shouted warnings to him and motioned to him to get down, and the switchman who had warned him to be careful called to him and waved his arms to warn him. While walking west with his back toward the viaduct he was struck by it and was thrown between the cars to the rails and killed. The freight train was going east to Western avenue and Forty-ninth street, four miles or more from Bond's home at 505 East Sixty-third street, in general direction toward his home. His mother, two sisters and a brother survived him.

The General Assembly, in establishing conditions under which compensation may be awarded under the Workmen's Compensation act, has fixed two requirements, inverted by the act from their natural order. Primarily the accident causing the injury must occur in the course of an employment. The contract relation of employer and employee must exist at the time of the accident and the employee must be doing some act within the scope of his employment, which means something which he is required to do because of his employment or which is an incident of the employment and reasonably connected with it, so that it may be said that the act is in the course of the employment. The other essential condition is that the accident must arise out of the employment, or, otherwise stated, the origin or source of the accident must be the employment. The rules of law by which liability is to be determined are clear and unquestioned, but in the multitude of accidents which occur under an infinite variety of circumstances almost any conclusion can be supported by decisions of boards, commissions and courts of varying degrees of authority, so that opinions on the subject are of little aid in the application of the law.

Bond was working as extra switchman whenever there was work for him to do but at no other time, and on the question whether the accident occurred in the course of his employment it is clear that the relation of employer and

employee did not then exist.   He had been working three days in place of Murphy, and not knowing that Murphy had returned he came to the yards to see whether there was employment for him and was told that there was not.   Under the circumstances it might reasonably be said that his coming to the yards was a necessary incident of an expected continued employment, but when he was told that Murphy had returned and his employment had ceased he owed no further duty to the employer and was not bound or expected to do anything.   It is true that an employee who is in continuous service, when on the employer's premises going to his place of work and with no other purpose, is performing an act which is a necessary incident of his work, but the accident to Bond did not occur under those circumstances. There was a separate employment from day to day, and if it was reasonable for him to report for work there was no further relation when he was told there was no work.   He could return to his home or go where he pleased.   It is not essential that an employee should be at the place where his work is to be done in order that an accident may be in the course of his employment, and an employee may under some conditions be within the protection of the Workmen's Compensation act although an accident happens on his way to or from his usual place of employment, (*Scully* v. *Industrial Com.* 284 Ill. 567,) but to say that an accident occurs in the course of an employment cannot be justified in a case where there is no employment.   The applicant did not establish the essential fact that the accident causing the death of Bond occurred in the course of his employment.

It was also necessary for the applicant to prove that the accident arose out of the employment, and if the danger encountered by climbing on the moving freight train approaching the viaduct did not result from obedience to any direction of the railroad company and was not an act necessary or incident to the business of the employer the injury did not come within the Workmen's Compensation act.

That was decided in *Nelson Construction Co.* v. *Industrial Com.* 286 Ill. 632, where a workman employed by the Illinois Central Railroad Company in constructing a railroad bridge over Rock river, at noontime crossed the bridge to eat his lunch and was struck by a train and killed. It was held that the accident did not arise out of and in the course of the workman's employment, and the rule was stated that where a workman chooses to go to a dangerous place where his employment does not necessarily carry him and where he incurs a danger of his own choosing and one altogether outside of any reasonable exercise of his employment, an accident does not arise out of and in the course of the workman's employment. If Bond had been employed on the day of his death and had been returning to his home from his work and was killed while on the premises of his employer and within a custom of employees to climb on moving freight trains in returning from work a different question would be presented. The rule was stated and applied in the case of *Inland Steel Co.* v. *Lambert,* 118 N. E. Rep. (Ind.) 162, where a switchman attempted to board a switch engine for the purpose of avoiding an excavation in his path and thereby encountered a danger of his own choosing, and we agree with the reasoning of the court in that case. At the time of the accident causing the death of Bond there was no relation of employer and employee existing but he was free to go where he chose, without any duty or obligation toward the railroad company. His death was caused by his boarding a moving freight train within a very short distance of the viaduct, purely for his own convenience and not in the discharge of any duty or obligation to the railroad company or having any reasonable connection with employment by the railroad company.

The judgment of the circuit court is reversed and the cause remanded to that court, with directions to set aside the award of the Industrial Commission.

*Reversed and remanded, with directions.*